UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE


<u>Colby Brown</u>

     v.                              Civil No. 06-194-JL
                                     Opinion No. 2008 DNH 196
<u>Town of Seabrook *et al.*</u>


                          **O R D E R**

     Colby Brown has sued the Town of Seabrook, its former chief of police, and two of its police officers, claiming excessive force, false imprisonment, and other violations of his rights under the federal and state constitutions, as well as state-law torts, arising out of his arrest five years ago, when he was fourteen years old.  Brown alleges that he was stomped, choked, and subdued with pepper spray during the arrest, which was carried out jointly by the defendant officers and members of the New Hampshire State Police who are not named as defendants here.

     The defendants move for summary judgment on a number of grounds, most notably the lack of competent proof that the Seabrook officers--as opposed to their state police counterparts--participated in any of the violent aspects of the arrest.  Brown, who is represented by counsel, has not responded to the motion.

     This court, which has jurisdiction under 28 U.S.C. § 1332 (federal question), heard oral argument on the motion on November

5, 2008. For the foregoing reasons, the court grants the defendants' motion for summary judgment.

## I. APPLICABLE LEGAL STANDARD

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, the "court must scrutinize the record in the light most flattering to the party opposing the motion, indulging all reasonable inferences in that party's favor." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).

As just noted, Brown has not filed any response to the defendants' motion for summary judgment. This does not affect the standard of review: the court still "must assure itself that the moving party's submission shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 (1st Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). But it does mean, under this court's Local Rules, that "[a]ll properly supported material facts in the moving party's factual statement shall be deemed admitted," since they

were not "properly opposed by the adverse party." L.R. 7.2(b)(2). Those facts are set forth below.[1]

## II. BACKGROUND

On the evening of November 18, 2003, defendant Chester Felch, an officer with the Seabrook Police Department, arrived at Brown's home in response to a call of a runaway juvenile. Brown's father told Felch that Brown, who was fourteen years old at the time, had left the house without permission after being grounded following his most recent suspension from school. Brown's father described his son as "out of control" due to escalating behavioral problems, adding that he would occasionally

---

[1] There is one part of the defendants' factual statement, however, that the court cannot accept: its account of the juvenile delinquency proceedings that were commenced against Brown following his arrest. New Hampshire law treats records of such proceedings as confidential, N.H. Rev. Stat. Ann. § 169-B:35, I, and makes disclosing them illegal except in limited circumstances not applicable here, id. §§ 169-B:36, B:37, II. So this court will not consider any aspect of the delinquency proceedings in deciding the defendants' summary judgment motion. To protect the confidentiality of those proceedings, the court will seal, at Level I, the defendants' memorandum in support of their motion and strike its Exhibit C, which consists of records of the proceedings. See L.R. 83.11(a)(1).
  The New York Court of Appeals has held that, under that state's juvenile confidentiality laws, a juvenile "waive[s] the statutory privilege . . . [b]y bringing a civil suit alleging that the police had used excessive force in apprehending him." Green v. Montgomery, 746 N.E.2d 1036, 1040-42 (N.Y. 2001). But whether a juvenile can "waive" the confidentiality that protects delinquency proceedings has never been decided by a New Hampshire court or, it would appear, by the courts of any state but New York; this court will not consider the issue here.

become angry and "break things." Brown's father asked Felch to find Brown and bring him home. So Felch set out to take Brown into protective custody as authorized by New Hampshire law. See N.H. Rev. Stat. Ann. § 169-B:9, II (recognizing police officer's authority for "taking into custody any minor . . . whose circumstances are such as to endanger such minor's person or welfare, unless immediate action is taken").

Traveling in his patrol car, Felch soon spotted Brown as he was walking along Route 1, a major road in Seabrook. Felch called out to Brown, asking him to come over to the car, but Brown ignored him. Felch then got out of the car, approached Brown, and ordered him to get in so Felch could take him home. Brown responded, "I ain't going anywhere," and kept walking. So Felch grabbed Brown by his shirtsleeve in an attempt to pull him over to the patrol car, marking the start of a protracted physical struggle between them. Felch grappled with Brown, vainly trying to force him toward the car; Brown, despite his youth, was taller and heavier than Felch. Felch did manage to use his radio to call for backup at some point. Eventually, Brown slipped out of his shirt, evading Felch's grasp, and ran around a nearby corner on to Railroad Avenue.

By that point, however, two state troopers had responded to Felch's call for backup. They arrived on the scene, exited their

vehicles, and pursued Brown down Railroad Avenue.  Felch, who was exhausted from struggling with Brown, did not join the pursuit.

Another Seabrook police officer, defendant John Wasson, also arrived on the scene of the initial struggle.  After learning from Felch that Brown had fled with state troopers in pursuit, Wasson proceeded to drive his police cruiser down Railroad Avenue.  He soon came upon Brown, who had been apprehended by the troopers but was continuing to struggle with them.  Wasson did not assist the state troopers as they eventually placed Brown in handcuffs; Wasson did not even touch Brown during his struggle with the troopers.  Felch, for his part, did not reach the scene until after Brown had already been handcuffed.

Brown, who had been sprayed in the face with pepper spray by the state troopers, was placed in the back of Wasson's cruiser. Wasson drove him to the Seabrook police station, where he assisted him with washing the pepper spray from his eyes.  There, Brown was booked on a charge of resisting arrest.  See N.H. Rev. Stat. Ann. § 642:2.

Brown later filed separate actions in the Rockingham County Superior Court against (1) the town of Seabrook, its chief of police, Felch, and two pseudonymous defendants[2] and (2) those

---

[2] The pseudonymous defendants were unidentified officers of the Seabrook Police Department and the New Hampshire State Police.  Brown has never amended his complaint to name them or attempted to join them as defendants.

same defendants as well as Wasson. Invoking federal question jurisdiction, the defendants duly removed the cases to this court, where they were consolidated into this action.

## III. ANALYSIS

Brown brings a number of claims against the defendants: (1) excessive force in violation of his rights under the federal and state constitutions, (2) false arrest and imprisonment in violation of his rights under the federal and state constitutions, (3) violations of his right to substantive due process under the federal and state constitutions, (4) a common-law claim for assault and battery, and (5) a common-law claim for intentional infliction of emotional distress. He further alleges that the Town of Seabrook and its police chief are liable for these violations under theories of municipal liability, supervisory liability, respondeat superior, and negligent training, supervision, and retention of the officers.

### A.   Excessive Force

The fatal defect in Brown's claim for excessive force is the absence of evidence that the defendants here, i.e., Officers Felch and Wasson of the Seabrook Police Department, its chief,

and the town itself, participated in the application of the allegedly excessive force during Brown's arrest.  Felch and Wasson, as just discussed, did not join in their state police counterparts' struggle with Brown on Railroad Avenue, during which he was doused with pepper spray and, he says, kicked, choked, and otherwise assaulted.  So neither Felch nor Wasson is responsible for this allegedly excessive force.  "It is well-established that only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable" under § 1983.[3]  <u>Velez-Rivera v. Agosto-Alicea</u>, 437 F.3d 145, 156 (1st Cir. 2006) (internal quotation marks omitted).

It should be noted that, in interrogatory answers that the defendants have submitted with their motion, the plaintiff states that, before his alleged assault on Railroad Avenue, he

> was tripped by an officer and fell to the ground.  I turned to face up and the first person I saw was a

---

[3]  Brown's amended complaint alleges that "[t]he Defendant officers acted together, in agreement with, and in conspiracy with each other."  Insofar as this could be read to charge a conspiracy among Felch, Wasson, and the state troopers to use excessive force against Brown, it is a charge devoid of evidentiary support.  Again, Felch was not present while the state troopers subdued Brown; Wasson barely was; and the only communication between either Felch or Wasson and the state troopers prior to their involvement was Felch's call for assistance on his radio during his struggle with Brown.  A request for an officer's assistance, plus that officer's "sudden, unilateral decision . . . to effect the arrest," does not equal a conspiracy.  <u>Crawford v. City of Quincy</u>, 215 F.3d 1311 (table), 2000 WL 231238, at *2 (1st Cir. Feb. 17, 2000) (unpublished decision).

> State Trooper pointing a can at me and I was sprayed by pepper spray . . . .  I assumed Felch had chased me and was the one who had initially tripped and knocked me down and was involved in assaulting me.

Brown also states that Wasson choked him during the ensuing assault, but Brown--who, by his own account, had only just been hit in the face with pepper spray--does not explain how he was able to identify Wasson as the one who choked him.

The defendants argue that Brown's version of events, though markedly different from theirs, does not create a genuine issue of fact sufficient to defeat summary judgment, since statements offered for that purpose "must be made on personal knowledge, set out matters that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e)(1).  Specifically, the defendants argue, Brown has simply "assumed" that Felch took part in the alleged assault, and provides only a "conclusory allegation" of Wasson's role.

"For purposes of summary judgment, an allegation . . . must be based on personal knowledge and show affirmatively that the affiant is competent to testify to the matters stated therein." Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 5 (1st Cir. 2005).  Just as, in certain circumstances, these foundational requirements may be fairly inferred from the balance of a witness's testimony, see, e.g., Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 50-51 (1st Cir. 1999), other

circumstances may call them into question so as to demand that the witness expressly state the basis of his personal knowledge and competence.  See, e.g., Nieves-Luciano, 397 F.3d at 5 (refusing to assume, "[w]ithout further foundation," employee's personal knowledge of what transpired in the workplace after he had been terminated); Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) (ruling that employee's statements about his employer's business relationships were inadmissible under Rule 56(e) where they existed before he commenced employment).

Brown, by saying that he "assumed" what Felch did during the alleged assault, has essentially conceded a lack of personal knowledge, making the interrogatory answer inadmissible on that subject.  See Schubert v. Nissan Motor Corp. in U.S.A., 148 F.3d 25, 30 (1st Cir. 1998).  Indeed, "rank speculation" cannot defeat a properly supported motion for summary judgment.  Rathbun v. Autozone, Inc., 361 F.3d 62, 66 (1st Cir. 2004).  While Brown states, rather than assumes, that Wasson choked him, Brown does not explain how he knows this, and his personal knowledge cannot be taken for granted, considering that, by his own account, he had just been sprayed in the face with pepper spray at that time. Cf. Nieves-Luciano, 397 F.3d at 5.  The personal knowledge requirement, as set forth in both Rule 56(e)(1) of the Federal Rules of Civil Procedure and Rule 602 of the Federal Rules of Evidence, prevents a witness from testifying to what he "could

not have actually perceived or observed." United States v. Rodriquez, 162 F.3d 135, 144 (1st Cir. 1998).  Because Brown, in his blinded state, could not have actually perceived or observed the identity of the officer choking him, his statement implicating Wasson does not demonstrate the requisite personal knowledge.[4]  Brown's statements in his interrogatory answers, then, cannot serve to create a genuine issue of material fact precluding summary judgment.

The statements in Brown's interrogatory answers are immaterial here for an independent reason:  they are at odds with the defendants' version of events as set forth in the statement of facts supporting their summary judgment motion (and, in turn, in the accompanying affidavits of Felch and Wasson), which has been deemed admitted under L.R. 7.2(b)(2) by virtue of Brown's failure to file any response.  See Part I, supra.  So, even if the statements in Brown's interrogatory answers were admissible to prove the defendants' identity, he has lost the opportunity to use that proof to contest the defendants' factual account by not

---

[4] It is not impossible, of course, for Brown personally to know which officer was choking him:  for example, Brown might have heard and recognized that officer's voice, or heard him referred to by name by his colleagues.  But Brown's statement does not set forth any such facts that might establish his personal knowledge in this way, and, as Rule 56(e)(1) specifically provides, it is his burden to do so.  Furthermore, at oral argument, Brown's counsel did not explain how his client was able to identify Wasson as the officer who choked him.

opposing their motion.  As the First Circuit has observed in upholding the application of a similar local rule to the same effect, "the decision to sit idly by and allow the summary judgment proponent to configure the summary judgment record is likely to prove fraught with consequence.  This case is no exception."[5]   Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (upholding application of similar local rule in the District of Massachusetts).

By Felch's own account, he did apply some force to Brown during their initial encounter, by grabbing his clothing in an

---

[5] Brown suggested at oral argument that, because the defendants filed the interrogatory answers with their moving papers, the court is obligated to consider the answers as "discovery and disclosure materials on file" in deciding whether there is a genuine issue of material fact under Rule 56(c), despite Brown's failure to dispute the defendants' factual statement under Local Rule 7.2(b)(2)(b).  In essence, Brown argues, Rule 56(c) trumps application of the local rule to deem the movant's properly supported facts undisputed, so long as the record contains evidence disputing them.

The court of appeals has held, however, that "the presence of a valid local rule requiring the opposing party to file a response to guide the court removes any requirement that might otherwise exist that the district court ferret through the record to consider [the plaintiff's] complaint."  Jaroma v. Massey, 873 F.2d 17, 21 (1st Cir. 1989).  Jaroma distinguished Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922 (1st Cir. 1983), where the court held that Rule 56(c) requires the court to peruse the entire summary judgment record, including materials filed with the moving party's papers and not referred to in the non-moving party's papers, but only absent a local rule like L.R. 7.2(b)(2)(b).  Id. at 931-32.  It follows that the Local Rule can be applied to deem the defendants' properly supported facts admitted, even though the record contains evidence, i.e., the interrogatory answers, that arguably disputes those facts.

ultimately futile attempt to force him into the patrol car.  This force was not excessive as a matter of law.  "To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances . . . 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)), cert. denied, 128 S. Ct. 1125 (2008).  While these kinds of fact-bound inquiries into reasonableness often present questions for the jury, "the facts might point so clearly toward reasonableness that no reasonable jury could decide for the plaintiff," making summary judgment appropriate.  Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 694 (1st Cir. 1994).

No reasonable jury could find on this record that Felch applied excessive force to Brown by trying to push him into the car.  Though Felch was attempting to take Brown into protective custody, not to arrest him for any crime, Felch had been told that Brown was increasingly prone to angry outbursts, and Brown refused to go willingly with Felch when asked.  Brown also resisted Felch's first application of physical force, i.e., grabbing Brown by the shirt, by attempting to flee.  Felch used

12

reasonable force under these circumstances.[6]  Because the defendants, according to the undisputed facts of record, had no role in the alleged assault upon Brown, and because Felch used reasonable force during his previous encounter with Brown, the defendants are entitled to summary judgment on his excessive force and substantive due process claims.[7]

**B.   False Arrest**

Brown also claims that his arrest violated his rights under the Fourth Amendment.  As noted supra, New Hampshire law allows a police officer to "tak[e] into custody any minor . . . whose circumstances are such as to endanger such minor's person or

---

[6]  In an interrogatory answer, Brown states that he was on his way home when Felch approached, and that he communicated that to the officer.  Brown further states that, right after grabbing him, Felch knocked Brown to his knees and attempted to force him to the ground.  As just explained, however, because this answer is at odds with the defendants' statement of facts in their summary judgment motion, and Brown has not submitted any opposition to that statement, the interrogatory answer is irrelevant.  Regardless, even taking into account Brown's version of events, and accepting it as true, does not alter the ruling that Felch applied reasonable force as a matter of law.

[7]  The Court in Graham made clear that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  490 U.S. at 395.  Accordingly, a plaintiff has only a Fourth Amendment claim--and no substantive due process claim--arising out of the use of allegedly excessive force during an arrest.  See Horta v. Sullivan, 4 F.3d 2, 13 n. 12 (1st Cir. 1993).

welfare, unless immediate action is taken." N.H. Rev. Stat. Ann. § 169-B:9, II. The court of appeals has held that the use of this statute to take "temporary protective detention of a child when there is reasonable suspicion to believe that he or she is in immediate danger" comports with the Fourth Amendment. Tremblay v. McClellan, 350 F.3d 195, 200 (1st Cir. 2003). The existence of the requisite quantum of suspicion for an arrest presents a question of law for the court, unless the answer depends on the resolution of disputed facts. Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004).

Here, by virtue of Brown's failure to contest the defendants' factual statement, the facts are undisputed: after Brown's father told Felch that Brown, a fourteen-year old who had been exhibiting behavioral problems, had left home without permission, Felch encountered Brown walking by himself along a busy road after dark, and Brown refused to let Felch take him home when asked. This evidence gave Felch reasonable suspicion to believe that Brown was in immediate danger so as to justify protective custody. See Tremblay, 350 F.3d at 200 (ruling that officer had reasonable suspicion for protective custody of juvenile "walking along a highway at two in the morning" where additional circumstances placed him in further danger).

It might be argued that Brown was not, in fact, taken into protective custody, but was arrested for resisting detention. In

any event, the police had probable cause to arrest Brown for that offense, which occurs "when the person knowingly or purposely physically interferes with a person recognized to be a law enforcement official . . . seeking to effect an arrest or detention," N.H. Rev. Stat. Ann. § 642:2, including protective custody, New Hampshire v. Kelley, 153 N.H. 481, 484-85 (2006). Probable cause to arrest Brown for that crime existed based solely on Brown's struggle with Felch--in which Brown, according to the undisputed facts, acted in precisely the manner prohibited by the statute--regardless of whatever happened afterwards.[8]  The defendants are entitled to summary judgment on Brown's false arrest claim.[9]

## C.  Other Claims

Brown's claims of municipal and supervisory liability against the town and its police chief cannot succeed in the absence of a constitutional violation by the defendant officers

---

[8] Again, even if Brown's interrogatory answers--in which he states that he said he was on his way home, but admits "pull[ing] away" and ultimately fleeing from Felch--are taken into account, there was still sufficient cause either to take Brown into protective custody or to arrest him for resisting detention.

[9] Though Brown's amended complaint also refers to "false imprisonment," its factual allegations do not include anything that happened after he was placed in Wasson's police cruiser, so the court need not consider the lawfulness of any further detention after that point.

which, as just discussed, cannot be proven.  See, e.g., Acosta, 386 F.3d at 12.  The court grants summary judgment for the defendants on those claims as well.

Finally, in light of the entry of judgment for the defendants on all of Brown's federal constitutional claims, the court declines to exercise supplemental jurisdiction over his state-law claims, including violations of the state constitution, assault and battery, negligence, and intentional infliction of emotional distress.  See 28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial . . . judicial economy, convenience, fairness, and efficiency . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  This is the usual case.

**IV.  CONCLUSION**

For the foregoing reasons, the court grants the defendants' motion for summary judgment (document no. 20) on Brown's federal law claims, declines to exercise supplemental jurisdiction over his state law claims, and remands those state law claims to the Rockingham County Superior Court.  The court also seals, at Level I, the defendants' memorandum in support of their motion (document no. 20-1) and strikes its Exhibit C (document no. 20-

4). The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: November 6, 2008

cc: Richard N. Foley, Esq.
Andrew B. Livernois, Esq.
Lawrence S. Smith, Esq.